ANDREW LINDSTRAND V. THE DELTA LUMBER COMPANY.[1]

*Negligence—Master and servant—Injury to workman in mill—Charge to jury.*

1. Plaintiff was employed in loading slabs upon a dump car in defendant's saw-mill, and, finding the car out of order, proposed to use another not designed for the same purpose in its place, but was told by the foreman not to do so, but to fix it temporarily, and it should be afterwards permanently repaired. Needing a piece of scantling of a certain length, plaintiff went to the other side of the mill to cut it to the required length on a circular saw used for trimming off the ends of defective boards, and with the use of which he was unfamiliar, and, while so doing, stepped into a hole through which the ends of the boards dropped, and fell against the saw, and suffered the loss of an arm, for which injury he brought suit. The declaration charged as negligence on the part of defendant the bad condition of the dump car, the refusal to allow the use of another, requiring plaintiff to use it and to fix it, which was claimed to be outside of his employment, and leaving the saw and its surroundings unguarded, so that, in attempting to obey the order of the foreman, he met with the injury.

   *Held*, that there is no legal theory on which the jury should have been allowed to consider any negligence that did not relate to the dangerous character of the saw as placed, in reference to the local arrangements; and if such arrangements were negligently improper and dangerous, if the defendant was responsible for plaintiff's undertaking to use it, and if he used it with proper care on his own part, the issue would include all that was material.

2. In such a case the charge of the court should point out what negligence the jury must find to have existed as a condition to recovery.

3. In such a case the court charged the jury that what the law requires is that the employer's duty shall be to provide such well-constructed machinery, and to have it as safely managed, as is consistent with the nature of the work to be performed, but did not call their attention to the particular nature of the supposed negligence, so as to confine it to any specified part of the mill or

---

[1] For final disposition of this case, see 36 N. W. Rep. 67.

its business, thus requiring the mill to be provided with every possible safeguard against accident.

*Held*, that this was going too far.   Reasonable care is the rule applicable in such cases.   It should have appeared that the methods used were unreasonable and plainly unsafe.   It is easy to see that precautions may be possible that no one has ever deemed essential, or that few have ever thought of adopting. Workmen familiar with a machine and its position do not need, as a rule, any extreme precautions, but if required by their duty to go into a dangerous place, where the danger is not visible or obvious, a duty may arise to give them special information ; but this would be necessary as well where the usual precautions had been taken as in any other case, if such persons were not reasonably presumed to understand the peril.   No such duty of special guarding or special warning is required as to persons who, without authority, go into a place where dangerous machinery is in operation, as plaintiff did in this case.

Error to Schoolcraft.   (Steere, J.)   Argued January 8, 1887.   Decided April 14, 1887.

Case.   Defendant brings error.   Reversed.   The facts are stated in the opinion.

*Moore & Moore*, for appellant.

*W. F. Riggs* (*John Power*, of counsel), for plaintiff.

CAMPBELL, C. J.   In October, 1882, plaintiff, who was then employed as a laborer by defendant at defendant's saw-mill in Schoolcraft county, had his arm cut off by a circular trimming saw.   This suit was brought to recover damages, on the claim that he suffered this hurt from defendant's negligence.

Plaintiff, who had not much knowledge of English, was at the time in question employed in loading up slabs from the logs as they were cut in the mill, upon a car on which when loaded they were run out into the mill-yard.   The car was what is known as a dump car, the floor or bed of which was kept level when loading by a hook and staple, or some equivalent, so that when unhooked the car bottom would be

turned over to one side upon a slope. It was desirable to have it kept level during loading, for fear of throwing off the slabs before they were to be unloaded.

On the morning of October 12, 1882, plaintiff, according to his showing, found the car which he was to load had not its fastening in order, and proposed to use another car not intended for the same purpose in its place. He says that Mr. Gray, defendant's foreman, told him not to, but to fix it as well as he could temporarily, and it should be fixed afterwards.

Plaintiff, without further instructions or inquiry, picked up a piece of scantling, and measured the length which he thought would be necessary to put under the car bed to prop it up until they could get the load on the back or further side of the car. He then went to the other side of the mill, to where the trimmer was, in order to cut it to the right length. This he undertook to do himself with a circular saw, without asking any one else about it, and placed the piece of scantling upon the moving apparatus in front of the saw, leaning over and holding it with one hand on each side of the saw. The piece inside of the saw, held in his right hand, was the one he meant to use. The table in which the saw was running was where he stood with his right side to it, and his right arm and hand were extended over and beyond the line of the saw. He held the stick in this way till the saw had cut through it, and then, undertaking to raise himself up and remove the two pieces, one in each hand, he, as he claims, stepped into the hole where the sawed-off trimmings dropped from the saw, and his right arm fell or was pushed against the saw, and cut off.

The saw in question was one which was hung so that it projected up through the table about six inches. Its purpose was to cut off the rough or defective ends of boards, so as to reduce them to the proper length of sound lumber, and the hole in question was just beneath it, so as to receive the ends

as they dropped, and let them through below, where they were removed as fast as they accumulated in a car provided for that purpose. At the time of the accident, plaintiff says these blocks filled the hole so as to rise a little above it, and he did not notice it, and stepped in it unawares. Plaintiff had never worked in a saw-mill, and had never used a trimmer saw for such a purpose, but had used small circulars before, such as were used in carpenters' shops.

The trimmer was a large table, about 18 feet long, with this trimmer saw towards one end, and four circular saws nearer the other end, so placed as to cut different lengths for sorting, and these other saws were managed by a person at the last-mentioned end, who applied the proper saw as required to each piece of lumber placed on the table.

The declaration contained various charges of negligence in regard to the dump car, and some other matters which had nothing to do with the immediate injury. As set out, these charges were the bad condition of the dump car, the refusal to allow the use of another, requiring plaintiff to use it and to fix it, which is claimed to have been outside of his employment, and, in doing that, leaving the saw and its surroundings unguarded, so that, in attempting to obey the order, he met with the injury.

Upon the trial several questions arose upon the reception and exclusion of testimony, and upon the rulings to the jury.

In order to understand the bearing of the more important objections, it becomes necessary to give some attention to the points presented and left unpresented by the charge, which, it is claimed, did not bring clearly to the jury the precise questions which should govern the case.

The charge, so far as it called the jury's attention to the faults which were supposed to create the cause of action, began with this summary:

"The suit is based upon the claim that the mill in which he was at work, which is owned by the defendant, was poorly

constructed, improperly constructed, and carelessly managed; and that, while he was working there under the directions of the foreman, he was injured from the negligent construction of the mill and management, without any fault or carelessness on his part."

The court then proceeded to state what were conceived to be the undisputed facts, as follows:

"It was undisputed that, on the day in question when the accident occurred, the plaintiff in this case was working with the slab car, carrying out slabs from the mill, and that the car was out of repair; that he spoke to the foreman about it, and was directed by him to fix it as well as he could, and continue his work; that he thereupon took a piece of scantling near where he stood, and measured the length he desired to cut off to prop up the broken portion of the car, and went to another part of the mill, where the trimmer saw was running, and attempted to cut the piece off to the length desired; that, while so doing, his foot slipped into a hole, he fell across the saw, and his arm was cut off. All those questions are not in dispute at all, and you assume them to be true, of course.

"The facts in dispute are the questions, in the first place, whether there was negligence on the part of the company in the construction and management of this mill. That is for your consideration and determination. That is the first question that you will naturally pass upon. If you do not find from the evidence that the mill was improperly constructed, or that it was carelessly managed, then that would naturally be the end of the case. If there was no negligence or carelessness on the part of the defendant which contributed to the injury, the plaintiff cannot recover. If you find, on the other hand, that there was negligence on the part of the company, in something pertaining to its mill, which contributed to the injury, then next take up the question of whether or not there was carelessness on the part of the plaintiff which also led to the accident. Even though there was fault on the part of the company, if he also was at fault, was careless or negligent in performing his duty, the law says he cannot recover."

After some remarks upon dealing with testimony, the court continued upon the question of negligence:

"In a business like the one in question,—the running of a

saw-mill, or the operating of dangerous machinery,—it is accompanied by certain risks. The employer does not absolutely guarantee the safety of the parties employed. A man entering upon such employment assumes the risks naturally incident to the nature of his employment. All that the law requires of the employer is to provide such well-constructed machinery, and to have it as safely managed, as is consistent with the nature of the work which is to be performed. If that is done, the law holds him harmless from accidents which may occur, and which do occur often in the operating of dangerous machinery.

"As to the negligence on the part of the plaintiff, which is the next question, you are instructed that it appears upon the undisputed evidence that he left his usual place of working; that he went to another part of the mill, to the trimmer saw, to cut off a piece of scantling. He went out of the usual line of his employment; and, even though that portion of the mill was negligently constructed and improperly managed, in order to recover he must show that in so doing he was obeying the order of the foreman; that in doing what he did he did that which the order naturally implied that he should do, and what would be required of him under the circumstances from the instructions given. He must not only show that, but also that in using the trimmer saw he was himself not guilty of any carelessness,—used it as a man should use a dangerous instrument, as that was, running. If he, in disobedience to the orders of the foreman, or in the absence of any orders upon that subject, left his usual employment and did other work, assuming greater risks than in the employment for which he was engaged, the responsibility is upon himself. If a man goes out of his line of employment, even in doing work for those for whom he is employed, and assumes greater risks, he is responsible for those risks himself."

These were the rules and instructions on which the case was left to the jury, apart from a question of settlement, and exception was taken to them. Several requests were made for charges, in some instances pointing out specifically the material points in controversy, all of which were denied.

The charges given are open to the objection that they are abstract, and not definite. If the controversy had been one where the declaration and testimony were confined to a single definite question of negligence, directly producing the result,

no confusion could arise under such a charge. But in the argument in this Court, as well as in the pleadings, the negligence sued for was not defined as relating to the position and surroundings or management of the trimmer. They included all the other doings in the mill with which plaintiff was at all concerned. As summarized in plaintiff's argument, the negligence which his counsel claimed to have been found by the jury embraced fault in furnishing a poor car, and leaving it out of repair; fault in ordering plaintiff outside of his employment, and exposing him to unknown dangers; as well as fault in having the saw and table and the place beneath insufficiently guarded, and without sufficient notice of danger. In the declaration the condition of the dump car was made as prominent as that of the saw and trimmer table, and more dwelt upon, and in the argument it was also much dwelt upon. It may therefore be fairly assumed to have been so in the trial court.

There is no legal theory on which the jury should have been allowed to consider any negligence that did not relate to the dangerous character of the saw as placed, in reference to the local arrangements. If that arrangement was negligently improper and dangerous, if the defendant was responsible for plaintiff's undertaking to use it, and if he used it with proper care on his own part, the issue would include all that was material. It could go no further. Whatever negligence there may have been in furnishing a poor slab car, or in requiring the plaintiff to use it, the accident did not arise from that cause. It arose entirely from plaintiff's use of the trimmer saw, and the charge should not have left the jury to cast round and inquire into the general management of the mill, or the particular management of the slab cars. In cases of actions for negligence, we have had frequent occasion to point out the necessity of confining inquiry to what is pertinent. It is undoubtedly true that in the present case, if plaintiff had not been employed in loading slabs, he

would not have used the slab car; and, if he had not used that, he would have had no occasion to meddle with it or to prop it up, and would have had no occasion to get a stick to do so. But none of these facts bore on the danger of using the particular saw which he did use, and they were too remote in the chain of facts to stand as proximate causes of his losing his arm. Yet they were claimed to have been grounds of recovery, and the jury under the charge had no teaching that they were not. The charge nowhere pointed out to them what negligence they must find to have existed as a condition of recovery. They were left at liberty to base it on anything they saw fit. This was error and material.

It is questionable whether there was testimony authorizing the jury to find that there was any negligence in the arrangement for carrying off the trimming blocks sawed off by the saw which caused the injury. But this we need not determine, as there are other difficulties in the instructions. The court charged that what the law requires is that the employer's duty shall be "to provide such well-constructed machinery, and to have it as safely managed, as is consistent with the nature of the work which is to be performed." As already suggested, the jury did not have their attention called to the particular nature of the supposed negligence, so as to confine it to any specified part of the mill or its business. But this instruction required that the mill should be provided with every possible safeguard against accident. This was going too far. Reasonable care is the rule applicable in such cases. It should have appeared that the methods used were unreasonable and plainly unsafe. It is easy to see that precautions may be possible that no one has ever deemed essential, or that few have ever thought of adopting. Workmen familiar with a machine and its position do not need, as a rule, any extreme precautions. If a person is required by his duty to go into a dangerous place, where the danger is not visible or

obvious, a duty may arise to give him special information. But this would be necessary as well where the usual precautions had been taken as in any other case, if such person were not reasonably presumed to understand the peril.

No such duty of special guarding or special warning is required as to persons who, without authority, go into a place where dangerous machinery is in operation. And this is probably what the court meant to suggest in the present case, when it was said that plaintiff could not recover for undergoing such perils unless he went in obedience to orders. But we do not think there was any such showing. All that he says about orders is that the foreman told him to fix up the dump car, temporarily, as well as he could. This cannot fairly be construed into a direction to incur any danger, or to go to any part of the mill he saw fit to go to, and himself saw a piece of scantling on any saw he might select. He was not told to fix the car in any particular way; and it is not presumable that any great difficulty would be found in a temporary make-shift, or that a prop, if wanted, could not be readily obtained from the bits of wood of all lengths that the case shows were constantly being carried away from the saws. Plaintiff would be presumed to know, what every man of common sense knows, that all machinery is in somebody's care, and should not be meddled with by others without direct authority. The danger of handling circular saws is so obvious and so great that a person with some experience, as he had, in wood-working, must be very careless in assuming to use a rapidly revolving saw, with which he says he was not familiar, without at least some inquiry. Mill-owners cannot be supposed to anticipate that laborers in other work about the mill will handle the saws, or assume that any such direction as was given in this case was meant to give any such discretion. Plaintiff does not testify that he supposed the foreman required him to run any such risk.

Had such orders been given, they would not have justified

him in doing what he did.  According to his own, which is the only, version of the facts, he undertook to get this piece of scantling sawed by leaning over the saw with one arm stretched out across it, so that, if he slipped, the destruction of his arm would be inevitable.  Leaning forward in such a position, holding one end of the stick in each hand, there would be a sudden cessation of resistance from the saw as soon as the stick was cut through, and the danger from any forward movement would be a danger of the worst sort. Such conduct was negligent and reckless, and the danger obvious to any one.

Whether the settlement claimed was valid was fairly enough submitted to the jury.  But we do not think plaintiff had any case to go to the jury on the facts on the main issues, and we do not discuss the minor and accidental issues.

The judgment should be reversed, and the case sent back for retrial.

The other Justices concurred.