ARTHUR SCHINDLER v. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

*Negligence—Charge to jury—Construction of pleadings—Declaration —Statement of cause of action—Failure to demur.*

1. In this case Mr. Justice CAMPBELL filed an opinion reviewing the legal questions raised, and holding that plaintiff made no case for the jury, no negligence on the part of the defendant being shown.

2. CHAMPLIN, J., filed an opinion, concurred in by LONG, J., concurring in reversing the judgment and in sending the case back for a new trial, with leave to the plaintiff to apply to the court for leave to amend his declaration, but reserved his opinion upon the question of defendant's negligence until the declaration shall properly allege the defendant's duty in the premises, and its neglect to observe the same.

3. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—While there are some courts which seem to have assumed that any damage done, or any collision between a train and things on the track, is presumably a trespass, so that an allegation of it amounts to an allegation of wrong which requires a defense by way of justification, that is not the general doctrine, and it has been positively denied by this Court, citing *Mitchell v. Railway Co.*, 51 Mich. 236, citing other cases.

*b*—Under our decisions, a railroad is entitled to the use of its track, subject to such conditions as the law lays down, and the use of it is at all times lawful unless these conditions are broken. A collision may be due to pure accident, or to the wrong of the person injured, just as well as to the fault of the company. No fault is presumed, and none can be relied on, until alleged and proved. It is the violation of duty which is the cause of action, and it must be such that if the duty had been performed there would have been no harm done. The duty is to do no willful wrong, and to use such methods as the law has required as likely to prevent them.

*c*—The law has never lost sight of the difference between *trespass*, where the act is presumptively wrong, until justified, and *case*, where the liability springs from the facts of the case as stated, and where a charge of what is a mere result from facts, and not itself a statement of facts, cannot be held good pleading. The court must be able to draw but one inference from the facts, as stated, and not from the pleader's inferences.

*d*—There are many simple cases where, when certain facts are shown, a general allegation of negligence or want of care gives all the information needed; and in such cases the whole, taken together, makes a good declaration. But a naked charge that a person negligently hurt another, with nothing more, cannot be sufficient.

*e*—This Court has several times expressed disapproval of the general propriety of leaving questions that may be better raised by demurrer to be passed on at the trial or hearing; but it has not held that such an omission was in all cases a waiver, or made a bad declaration good without amendment, so as to make a good cause of action where none is alleged.

*f*—The statute of amendments is the basis of all the modern relaxation of rules of practice; and its manifest object is to give parties who are met with such objections on a trial the right of amendment on reasonable terms, and to make a verdict, where no point has been previously made at all, valid to rectify all defects that are not so radical as to leave nothing

to amend, and to treat the record as if it had been actually amended. If there is a possibility of making such amendments as will present a good case, they will be permitted, when the declaration is objected to, on the most favorable terms; and, in a majority of cases, with no need of any, or of any long, delay. It is only where the record itself shows what the amendment should be that it need not actually be made. An imperfect statement cannot be enlarged beyond what it means or fairly implies. But no statement is good that does not indicate the nature, at least, of the wrong complained of.

*g*—The decisions of this Court have been uniform that no proof of negligence can be received, beyond what is alleged, and that allegations of the wrong are necessary.

*h*—In *Batterson v. Railway Co.*, 49 Mich. 185, it was held that no proof could be a ground of recovery, not within what was alleged with reasonable certainty, and the same rule was laid down in *Henry v. Railway Co.*, 49 Id. 495, and in *Railroad Co. v. Marcott*, 41 Id. 433.

*i*—In *Ives v. Williams*, 53 Mich. 636, it was held a failure to demur would not allow the scope of a declaration to be enlarged beyond what it would have been if properly framed on the same allegations, and the same principle was laid down fully in *Parker v. Armstrong*, 55 Id. 176, holding that a declaration bad intrinsically, for want of needful averments, could not be made good by not demurring. See, also, *Stoflet v. Marker*, 34 Mich. 313; *Jackson v. Collins*, 39 Id. 557; *Thompson v. Railway Co.*, 57 Id. 300; *Klanowski v. Railway Co.*, 64 Id. 279.

*j*—Unless something definite is averred, there is nothing to enable it to be known what is pertinent to the issue. A person suing for a single cause of action is bound to know beforehand what wrong he complains of, and wherein the wrong consists. It is not competent to go before a jury on uncertain or conflicting claims. Neither is it competent for a court to allow a mass of testimony to go before a jury, and leave them to decide, each for himself, what is legal negligence and what is not. See cases above cited, and *Anderson v. Boom Co.*, 57 Mich. 216; *Lindstrand v. Lumber Co.*, 65 Id. 254, 259.

*k*—If the fact that a defendant knows that a declaration contains a false charge or description precludes him from relying on or showing its falsity, there is not much use in rules of pleading. A misdescription is frequently as important as any other false statement, and it has been held, in our own decisions, that a serious misdescription is fatal to recovery in cases like the present.

*l*—In *Batterson v. Railway Co.*, 49 Mich. 184, it was held that for obvious reasons a difference existed between a main track

and a side track, as to conditions of maintenance in order. In *Klanowski v. Railway Co.*, 64 Id. 279, an accident alleged at one road crossing, when it occurred at another, was held badly alleged; and in *Ives v. Williams*, 53 Id. 636, a similar difficulty existed in regard to interference with a tenant's enjoyment. In *all* of these cases, it was known to both parties *where* the facts occurred.

Error to Gogebic. (Williams, J.) Argued June 13 and 14, 1889. Decided October 25, 1889.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*M. M. Riley* and *C. M. Howell (Bradley G. Schley* and *Alfred Russell*, of counsel), for appellant.

*Hayden & Young (M. H. Crocker*, of counsel), for plaintiff.

[The opinion discusses the positions of counsel.— REPORTER.]

CAMPBELL, J. Plaintiff, who is a little boy, was in the back part of a long sleigh, loaded with beer, owned and driven by one John Schupp, a teamster and agent for a beer house; and the sleigh was struck by the rear end or steps of a caboose, while crossing defendant's track, at Wakefield station, in Gogebic county. The accident took place on the depot grounds, January 29, 1887. Plaintiff was thrown out, and fell on the track. The hind wheels of the caboose did not touch him; but the fore wheel on one side caught and bruised one of his legs, without running over it. The injury required amputation.

At that station there is a main track and two side tracks, lying on the south side of defendant's premises, running east and west; and at the date in question one Miller, whose agent Schupp was, had a beer warehouse on

defendant's grounds, north of the tracks. A village street, known as "Sunday Lake Street," 60 feet wide, as laid out, ran across, north and south, between the station and this warehouse, which was 152 feet east of the street. A spur, or branch, called the "Sunday Lake Mine Spur," left the main track between the station and Sunday Lake street, running on a north-easterly curve from a switch about 50 feet west of the street, thence crossing the street, and extending north-easterly to a mine, the distance of which does not appear. The accident took place about 50 feet north-east from Sunday Lake street, on this spur. The front village street, called "Nunnemacher Street," lay north and parallel with the main track, as far east as Sunday Lake street, and thence about 60 feet from and parallel with the spur track, being crossed by Sunday Lake street. The depot grounds, which extended a considerable distance east and north-east from Sunday Lake street, on both sides of the spur, and the main track, were not inclosed by fences.

On the morning of the day in question, Schupp drove down to the beer house with a long sleigh,—about 18 feet long,—drawn by a mule team, to get a load of beer, in kegs. He unlocked the warehouse, and got 14 kegs, which he loaded in his sleigh. While he was in the warehouse, a train of freight and ore cars passed, going westward to the station, and backed up towards the spur, over which a part of the cars were to go. The rear car was a four-wheeled caboose. Several children, including plaintiff, had been allowed by Schupp to ride down with him; and when he was ready to start they had piled into his sleigh, the back part of which was not filled with kegs. According to his testimony, he drove off the larger boys, and put off the girls and the plaintiff, and started towards the village, on a track through the snow, which he claims had been commonly used, across defendant's grounds to

the intersection of Nunnemacher and Sunday Lake streets, which struck the spur rails about 50 feet eastward of Sunday Lake street, and between 25 and 30 feet north of the north side track, which was a few feet south of the beer house. Plaintiff had got or been put again into the back of the sleigh, and was not seen by Schupp, or any one else but some of the other children. The snow was deep, and ridged on either side of the spur by the snow-plow, between 18 inches and 2 feet. The passage-way was not a road, but a single path, made through the snow as a short cut, by persons coming down to the track east of Sunday Lake street; rising at the ridge, and descending into the trough between the ridges, where there was a single line of rails. According to Schupp's statement, he stopped about 10 feet from the spur, and saw the caboose and cars ahead of it, but did not see that they were backing. He drove on over the ridge, and across the track; one of the mules slipping, but recovering himself. He then saw the cars coming, and whipped up his team, and they got across, except that the rear 18 inches of the sleigh was struck by the steps of the caboose, and the sleigh upset. Plaintiff fell on the track, and the hind wheels of the caboose did not touch him; but the north fore wheel hit his leg, and pushed him along a few feet, injuring him as before mentioned. The caboose was stopped by the beer kegs, which were not run over, but lifted up the end. It stopped a very few feet from where the accident happened. The testimony of plaintiff's witnesses, except Schupp, and of all the other witnesses, agrees that the cars were moving back when Schupp started from the beer house, and were in sight all the time. There is no testimony indicating that the plaintiff was seen or visible before the accident, being behind the beer kegs, sitting on the bottom of the sleigh.

The case was submitted to the jury, overruling defendant's objections on the general merits, and upon various points made specifically; and they found a verdict of $10,000 for plaintiff. Defendant brings error.

After refusing a continuance, for reasons that we shall not consider, and in language which was also excepted to as prejudicing the jury, the court also refused to entertain an objection that the declaration was not such that any testimony could properly be introduced under it. The judge did so, using this language:

"If the defendant objects to the declaration. on the ground that it does not with sufficient definiteness apprise him of the negligence complained of, the objection should be made before the case comes on for trial. Our own Supreme Court has criticised that method of procedure pretty severely. I have no doubt but what this motion as made here raises a question which is very close to the line; but, being so utterly opposed to this method of practice of waiting until the trial comes on before making the objection to the declaration, I shall leave the responsibility with the plaintiff's counsel. Let the witness be sworn."

The declaration contains one count, which is substantially to this effect: After setting forth the ownership by defendant of the main and side tracks, including the Sunday Lake mine branch or spur, it proceeded:

"And which main and side tracks, at and near said station, were wholly uninclosed, and were then and there, at all times, open, and were then and there contiguous to a public highway and street of said village, called 'Sunday Lake Street,' and crossed said street; and said side track, called the 'Sunday Lake Mine Track,' commencing at or near said depot, ran, in an easterly direction, across a certain other public road; said last-mentioned public road running from said Sunday Lake street, across the right of way of said defendant, to and along the side track nearest said main track. And that said last-mentioned public road was used by large numbers of the people of said village, residing in the vicinity of said station and

depot, and had been so used and traveled upon, to the knowledge of said defendant, its servants and employés, for a long time prior to said twenty-ninth day of January, 1887. That the plaintiff, at the time aforesaid, was an infant of tender age, to wit, of the age of five years, and resided with his parents in said village of Wakefield, on said Sunday Lake street, and in the vicinity of said station and depot of defendant.

"That at the time aforesaid, to wit, on the twenty-ninth day of January, 1887, the plaintiff was riding in a single sleigh drawn by a team of horses, which sleigh and team was being driven by John Schupp, upon said road, towards said Sunday Lake street, with all due care and diligence; that while said sleigh was approaching the crossing of said Sunday Lake mine track a certain freight train of defendant, with a locomotive attached thereto, and under the care and management of divers servants of the defendant, was standing upon said side track, to the west of said road, and about eighty feet therefrom; and that, while said sleigh, with the plaintiff therein, was crossing the said railroad track at the said crossing, upon said public road, the defendant then and there, by its servants, so carelessly and improperly managed the said locomotive engine and train that, by and through the negligence and improper conduct of the defendant, by its said servants, in that behalf, the said train then and there ran and struck with great force and violence upon and against the said sleigh; and thereby the said plaintiff was then and there thrown with great force and violence, from and out of the said sleigh, to and upon the track of said railroad. And the said plaintiff, when so thrown upon said track, was struck by the rear car of said train, and was run over by the wheels of said car, and then and there, without any fault or negligence on the part of said plaintiff, his parents or guardians, and without any fault or negligence on the part of said John Schupp, the driver of said sleigh. And by means of the premises, and by and through the wrongful conduct, carelessness, and negligence of said defendant, its agents and servants, as aforesaid, the leg of said plaintiff was cut off, and he then and there, by means of the premises, sustained the permanent loss of one leg as aforesaid, and was rendered sick, sore, lame, and disordered, and so remained and continued," etc.

The rest refers to damages.

When plaintiff's testimony was all in, defendant moved to strike it out, and for a nonsuit; but the court refused to hear argument upon it, ruling that defendant might, after all the testimony was in, ask a charge directing a verdict, and then make argument on it. When the testimony was through, the court refused to hear the same application separately, and confined its discussion to the general argument. When the case was submitted, the court disposed of these objections in this way, by addressing the jury:

"I am asked, in the first place, to charge you that the plaintiff cannot recover in this case, in consequence of the insufficiency of the plaintiff's declaration. A declaration is filed as the commencement of suit, and served upon the defendant. Defendant has an option to say that the declaration is not sufficient in law, which raises a question of law, or it has the privilege of joining issue on the question of fact. If the counsel for the defendant think the declaration is insufficient in any respect, or does not sufficiently apprise them of what the charge against them is, they can demur; and upon this question of law the sufficiency of the declaration will be determined. They decided not to take this course, but joined issue on the question of fact, and at the beginning of the case, before any of the witnesses were sworn, they asked that no evidence be introduced on the part of the plaintiff, because of the insufficiency of the declaration. Having seen fit to waive the joinder of the issue of law, and having joined in the issue of fact, if the declaration is sufficient to sustain a verdict, if a verdict shall be rendered, I don't think they should have the benefit of the objection at that time. I think it is bad practice. I don't think the plaintiff should be put to the expense of preparing for trial, procuring witnesses, etc., where objection will be made to the introduction of any evidence. I think the proper practice is to demur to the declaration. Had a demurrer been interposed before the plaintiff had been put to the expense of preparing for trial, I should have sustained the demurrer, in consequence of the insufficiency of the declaration.

But, not having demurred, I shall not sustain the objection.

"I am also asked to charge that the plaintiff, in his declaration, having alleged the injury to have taken place on a public road or highway, that there is no evidence in the case showing that it was a public highway or road, and that therefore there is a variance between the allegation in the declaration and the proof in the case; and for that reason they ask me to decide the case for the defendant. Upon that point, I have this to say: The place where the injury was occasioned was known to both plaintiff and defendant. The plaintiff indicated it; and the defendant indicated it upon its map, which it produced here, and hung up before you, at the beginning of the trial. The defendant has indicated the same place that the plaintiff has. There is no doubt as to where the accident took place; they both agree upon that; and to say that the plaintiff shall not recover because he possibly has designated this place by the wrong name, is not, to my mind, a sufficient variance to warrant granting the motion. As far as all practical matters are concerned, there is no variance. Calling a thing by the wrong name, as long as they have got the right place, is not of sufficient consequence to warrant granting the motion.

"I am asked, again, to charge you that the plaintiff cannot recover, because he has in his declaration alleged that there was an engine attached to the train. Well, as a matter of fact, there was an engine attached to the train when it came in. There was an engine attached to the train when it began to back. When the three or four cars were shunted onto the siding, whether the engine was attached to the train or not, I do not pretend to say; but the backing of the train was in part, if not wholly, the cause of those running down there. I think that point is rather too fine upon which to ground the motion that is asked for.

"Now we come to the merits of the case," etc.

Both parties presented requests, calling attention to the various points which they especially desired to be presented specifically to the jury; all of which were refused. Defendant's requests numbered 26, and they are all stated in the bill of exceptions to have been refused; and no

qualification is added. Plaintiff's requests are stated to have been refused, except as modified in the charge.

After the court had completed his charge, plaintiff's counsel called attention to some statements in his favor, which he suggested were beyond what the court could properly give, and the court stated the rulings had been made as plaintiff now claimed they should be. Counsel for defendant, who was not a member of the Michigan Bar, then asked this question:

"May it please the court, as a matter of practice, I would like to know whether the instructions asked for by the defendant are refused or granted, or do you consider them granted, in so far as you have incorporated them in your oral charge?"

To this the court answered:

"If I have not given your written requests substantially, or have not read them, they are refused. I will read a couple of the requests of the defendant:

"'The right of the plaintiff to recover for the injury alleged in the declaration in this case must depend on concurring facts.'

"I think I have covered that.

"'The defendant must be guilty of some degree of negligence which contributed to the injury.'

"I have covered that also, but I give it again."

To this defendant excepted.

Before going further, it is evident that by singling out these two paragraphs, without any new request, and presenting them as specially noticeable, the impression so created by the court's last words to the jury could not fail to do harm, by suggesting these insignificant truisms as important, and as being the chief grounds of defense. No one would ever think of presenting such points by themselves, or as of any separate weight, and the necessary inference would be one throwing discredit on the defense.

Referring to the charge itself, the court, after discussing and ruling upon several questions concerning contributory negligence, which, if the jury were supposed to confine themselves to a subsequent part of the charge, would have been entirely irrelevant, but which, nevertheless, were given by way of instructions, passed on to the question of defendant's negligence.   This was dealt with as follows:

"We come now to the question, properly, of what negligence the defendant must be guilty of, in order to make it liable.   Circumstances, as you have often heard, alter cases; and they modify, to some extent, the law applicable to cases.   Now, with reference to a plaintiff of mature years, if he goes upon the track of a railroad company where he is either positively or impliedly invited, then that railroad company owes him such care and attention that they shall not be guilty of 'ordinary negligence,' as it is called.   But if that man goes upon a place or part of the railroad—walking along the railroad track, for instance, not on its depot platform—where he has no business to be; where the railroad company does not invite him to go, and does not expect him to be, then a different rule applies, even with reference to an adult, and in that case he is, in law, technically, a trespasser. He had no business there, and the company had no reason to expect he would be there; and if, under those circumstances, he seeks to recover against the defendant, he must show not only that the defendant has been guilty of ordinary negligence, but, in addition to that, guilty of gross negligence.

"Now, I can't see, in my own mind, why the rule of law should vary because the plaintiff is of immature age. I think the rule should be the same with respect to a child of tender age as with respect to a grown person, upon this matter.   Understand me, gentlemen, while the law would be the same, it would be proper to remark that what would be negligence with reference to a young child upon the railroad track, where he had no business to be, gross negligence, might not be more than ordinary negligence if it was a grown person on the track.   Railroad men seeing a person of mature years upon the track, they have a right to suppose that that person has the

intelligence and capacity of a mature man, unless they know to the contrary; and they have a right to suppose that he will take such steps to protect himself and get off from the track, or away from where he ought not to be, as a sensible man would take.  A child has not the same judgment as a grown person.  He is not expected to have, and when a child is upon the track, or known to be upon the track, then they must exercise more care, because nobody expects that a child will act with that coolness and judgment, and have the capacity to take care of itself, under such circumstances, as the majority of men would.  And hence, I say, what might be ordinary negligence in the case of a grown person being upon the track, might be gross negligence, if it was a child."

The court then proceeded to put aside, as unimportant, the question of this being a highway crossing, as the evidence only showed it a way by license, and said that the defendant had given no such license to children, and that plaintiff had no right there.  The charge went on:

"Having no right there, I charge you that the rule is in such case that the plaintiff, in order to recover for the injury, must show that the defendant was guilty of gross negligence.  Ordinary negligence will not answer. By gross negligence, I don't mean exactly that a man would be guilty of murder, or that he intended to run down and kill the child; but I mean that degree of carelessness, that degree of recklessness, which shows a disregard of the safety of persons who may happen to be there.  For fear I may forget it, right here I will say: If you find from the evidence that the railroad company licensed or permitted people to cross that track at that place, as they had occasion to go on business down at the depot, then, with reference to the care they should exercise in running the train across there, the law would be that they must have regard to this license or privilege they have given these people to go there, if they have given such privilege; about which I say nothing.  And the degree of care they should properly exercise at such a place would depend something upon the extent of the crossing,—the size of the place.  For instance, you know that they should exercise more care where there are a

hundred people expected to go across in an hour from what there would be if it was a little village, of eight or ten houses, and a very few going across. The greater the danger, the greater the necessity for care. That is about all there is to it."

"Now, it is claimed on the part of the plaintiff that these railroad men saw this child with Schupp; that they saw him leaving in the sleigh with Schupp, and must have known, having seen them, that they were about to pass this spur track at the place indicated. I give you no intimation of my own as to what my ideas are with reference to whether they saw them or not. Understand me, gentlemen, I am leaving the facts entirely to you. Don't take any intimation with reference to the facts from anything I may say, or anything you may think I say. I wish to pass no opinion upon that question. It is for you to determine whether they did see them or not, and what figure it would cut in the case, as bearing on the question of their negligence, or the degree of their negligence."

The court then referred to whether the bell was rung and whistle blown, and undertook to give the jury instructions as to dealing with conflicting testimony on that point, and as to their right to determine between witnesses, whom they would or would not believe. Returning again to the question of negligence, this is stated·

"Now, with reference to the care and caution to be exercised by defendant, I wish to say one word more right here. This child, under the evidence, was in the sleigh of Schupp. It is for you to say how far that railroad company, or the railroad employés running and operating that train, should be governed by this fact. If he was in the sleigh of Schupp, would they have a right to suppose (and presumptively they would) that the man in the sleigh would use his judgment instead of the judgment of the child; and the railroad men would have a right to suppose it was the judgment of Schupp, who had the care of the sleigh and the care of the child, that would be exercised instead of the judgment of the child. But I leave that question of fact to you to be determined in the case. What, under fairness, ought those men to be required to have done under the circumstances ? If

you find, under the circumstances, that the defendant's employés, in the running of that train, were guilty of such negligence as indicates a disregard for the safety of this boy, then it is your duty to say that the defendant is guilty, and it will be your duty to determine how much the defendant ought to pay."

Instructions were then given on the subject of damages which were separately excepted to.

The jury went out, and were absent from 10 o'clock A. M. to 6 o'clock P. M., without agreeing. They then sent word that they desired further instructions, and on their return these proceedings were had:

"*A Juror.* May it please your honor, there is some little dispute about what you said about the negligence of the company; about wanton negligence; also about the circumstances of the boy being in Schupp's sleigh.

"*The Court.* Do you mean what sort of negligence the company must be guilty of?

"*A Juror.* You made some remarks about what wanton negligence was; that is, gross negligence

"*The Court.* By gross negligence, I don't necessarily mean that a man intended purposely to run down another one, or to kill him; but it meant carelessness,—it meant recklessness,—it meant such recklessness as would indicate a disregard of the safety of the public or passengers, or those who were in the way. And, with reference to Schupp, I said you would have a right to conclude, the boy being in Schupp's sleigh, that the trainmen would look at it that he was in the control of Schupp, and that Schupp would take care of him, or take such care of him as best he could, being a man; and that you had a right to consider that, with reference to the negligence of the company. These things, with reference to that, are a matter of common sense. That is about all there is of it, anyway, and that is all you have to do,—to exercise your best judgment and sense in determining questions of this kind. Now, gentlemen, don't any of you become opinionated, and stick to your opinion, right or wrong; but confer together, carefully and candidly, without any feeling on the part of any of you, without any anger,— I have no idea to suppose there will be,—without any prejudice; and try and reach a conclusion. We have

been three days trying this case, and it is desirable that there should be a verdict. Each one of you have a judgment of your own upon the subject; but try and get together, if you can. I say it is important that you should try and reach a conclusion, and agree."

The jury thereupon had the issue left to them, and found a verdict of $10,000.

It is claimed here, as below, not only that the declaration was such as to render the case, as attempted to be proved, insufficient, but also that it was bad on its face, as presenting no definite cause of action.

The declaration contains no averment of any kind setting up any duty, or any violation of duty, laid by law upon defendant. The whole averment of acts and wrong is found in a few words, which are these:

"That, while said sleigh was approaching the crossing of said Sunday Lake mine track, a certain freight train of defendant, with a locomotive attached thereto, and under the care and management of divers servants of the defendant, was standing upon said side track, to the west of said road, and about eighty feet therefrom. And that, while said sleigh, with the plaintiff therein, was crossing the said railroad track, at the said crossing, upon said public road, the defendant, then and there, by its servants, so carelessly and improperly managed the said locomotive engine and train that by and through the negligence and improper conduct of the defendant, by its said servants, in that behalf, the said train then and there ran and struck with great force and violence upon and against the said sleigh; and thereby the plaintiff was then and there thrown with great force and violence, from and out of the said sleigh, to and upon the track of said railroad," etc.

Leaving out all reference to the lack of positive averments, instead of inferential, in regard to some of the facts, it appears that here are two leading facts, stated without any recited connection, one of which is, by itself, entirely unimportant. The fact that the freight train stood on the track, 80 feet away, while the sleigh was

approaching, is of no consequence whatever, alone. It is not given by the declaration any significance in regard to the subsequent collision; and it would require an averment to connect it. The declaration does not charge that the driver of the sleigh relied, or had any reason to rely, on the train remaining still till he could pass, or that it started unexpectedly or improperly, when it should have waited,—or any other fact connecting the standing still with the subsequent accident; and it is not alleged that it should not have started, or that it was started in any improper way. This, if it existed, would have been a very important element in the case, as will appear more fully hereafter.

The negligence is confined by the allegation to the single assertion that defendant, by its servants, "so carelessly and improperly managed the said locomotive engine and train" that by and through "their negligence and improper conduct" the train struck the sleigh.

While there are some courts which seem to have assumed that any damage done, or any collision between a train and things on the track, is presumably a trespass, so that an allegation of it amounts to an allegation of wrong which requires a defense by way of justification, that is not the general doctrine, and it has been positively denied by this Court. *Mitchell v. Railway Co.*, 51 Mich. 236 (16 N. W. Rep. 388), citing other cases. Under our decisions, a railroad is entitled to the use of its track, subject to such conditions as the law lays down, and the use of it at all times is lawful unless those conditions are broken. A collision may be due to pure accident, or to the wrong of the person injured, just as well as to fault in the company. No fault is presumed, and none can be relied on, until alleged and proved. It is the violation of duty which is the cause of action, and it must be such that if the duty had been performed there would have been no harm

done. The duty is to do no willful wrong, and to use such methods as the law has required as likely to prevent them.

The court below not only ruled that this declaration, not being demurred to, must be held to set up a cause of action, but it also held it sufficient to let in any testimony which plaintiff saw fit to offer. All that is averred is simply that defendant negligently struck a sleigh at a road crossing, the driver not being in fault; and, in so holding, the judge claimed to be following our rulings. On the argument no case was cited that goes as far as his rulings, and no such rule can be recognized, without disregarding the purpose of pleading, to inform the defendant what case is to be made against him.

When a corporation is sued for such a cause of supposed grievance, whatever neglect exists must be that of one or more of its numerous agents and servants, of high or low degree of powers. It is hardly possible to enumerate all the ways in which negligence may be manifested. It may be in the choice of improper agents or servants; in the condition of track, or cars, or engines; or in the immediate misconduct of its servants, confined to the circumstances of the particular case; or in more general arrangements; or in violating special arrangements; and, perhaps, in other ways, that do not occur to any one in advance of actual cases.

The law has never lost sight of the difference between trespass, where the act is presumptively wrong, until justified, and case, where the liability springs from the facts of the case as stated, and where a charge of what is a mere result from facts, and not itself a statement of facts, cannot be held good pleading. The court must be able to draw but one inference from the facts, as stated, and not from the pleader's inferences.

There are many simple cases where, when certain facts

are shown, a general allegation of negligence or want of care gives all the information needed; and in such cases the whole, taken together, makes a good declaration. But a naked charge that a person negligently hurt another, with nothing more, cannot be sufficient.

This Court has several times expressed disapproval of the general propriety of leaving questions that may be better raised by demurrer to be passed on at the trial or hearing; but it has not held that such an omission was in all cases a waiver, or made a bad declaration good without amendment, so as to make out a good cause of action where none is alleged. The statute of amendments is the basis of all the modern relaxation of rules of practice; and the manifest object of that statute is to give parties who are met with such objections on a trial the right of amendment on reasonable terms, and to make a verdict, where no point has been previously made at all, valid to rectify all defects that are not so radical as to leave nothing to amend, and to treat the record as if it had been actually amended. If there is a possibility of making such amendments as will present a good case, such amendments will be permitted, when the declaration is objected to, on the most favorable terms; and, in a majority of cases, with no need of any, or of any long, delay. It is only where the record itself shows what the amendment should be that it need not actually be made. An imperfect statement cannot be enlarged beyond what it means or fairly implies. But no statement is good that does not indicate the nature, at least, of the wrong complained of.

The decisions of this Court have been uniform that no proof of negligence can be received, beyond what is alleged, and that allegations of the wrong are necessary. In *Batterson v. Railway Co.*, 49 Mich. 185 (13 N. W. Rep. 508), it was held that no proof could be a ground

of recovery, not within what was alleged with reasonable certainty. The same rule was laid down in *Henry v. Railway Co.,* Id. 495 (13 N. W. Rep. 832), and *Marquette, etc., Railroad Co. v. Marcott,* 41 Id. 433 (2 N. W. Rep. 795). In *Ives v. Williams,* 53 Id. 636 (19 N. W. Rep. 562), it was held a failure to demur would not allow the scope of a declaration to be enlarged beyond what it would have been if properly framed on the same allegations. The same principle was laid down fully in *Parker v. Armstrong,* 55 Id. 176 (20 N. W. Rep. 892), holding that a declaration bad intrinsically, for want of needful averments, could not be made good by not demurring. See, also, *Stoflet v. Marker,* 34 Id. 313; *Jackson v. Collins,* 39 Id. 557; *Klanowski v. Railway Co.,* 64 Id. 279 (31 N. W. Rep. 275); *Thompson v. Railway Co.,* 57 Id. 300 (23 N. W. Rep. 820).

Unless something definite is averred, there is nothing to enable it to be known what is pertinent to the issue. A person suing for a single cause of action is bound to know beforehand what wrong he complains of, and wherein the wrong consists. It is not competent to go before a jury on uncertain or conflicting claims. Neither is it competent for a court to allow a mass of testimony to go before a jury, and leave them to decide, each for himself, what is legal negligence and what is not. See cases above, and *Anderson v. Boom Co.,* 57 Mich. 216 (23 N. W. Rep. 776); *Lindstrand v. Lumber Co.,* 65 Id. 254, 259 (32 N. W. Rep. 427).

The defect in the declaration here naturally led to errors in the progress of the cause and in the charge. But the rulings came directly within what is criticised by our precedents. The declaration did specify the place of the injury, and described it as a public road. The court held the variance between this allegation and the admitted facts was not material, because the parties all

knew where the accident happened, and intimated that counsel were going beyond propriety in setting up such a variance.

If the fact that a defendant knows that a declaration contains a false charge of description precludes him from relying on or showing its falsity, there is not much use in rules of pleading. A misdescription is frequently as important as any other false statement; and it has been held, in our own decisions, that a serious misdescription is fatal to recovery in cases like the present. In *Batterson v. Railway Co.*, 49 Mich. 184, it was held that for obvious reasons a difference existed between a main track and a side track, as to conditions of maintenance in order. In *Klanowski v. Railway Co.*, 64 Id. 279, an accident alleged at one road crossing, when it occurred at another, was held badly alleged. In *Ives v. Williams*, 53 Id. 636, a similar difficulty existed in regard to interference with a tenant's enjoyment. In all of these cases, it was known to both parties where the facts occurred.

This is not a difference merely in distance between two localities, which might not involve any material question, but it is a difference involving vital questions. If we should regard the allegations of negligence as showing enough to allow a trial, it could only be such negligence as involves a violation of duties at such a place as is described. This declaration, by the broadest inferences, could only refer to negligence at a highway crossing. The duties to persons using a public highway are very different from those existing on railway premises. It is not averred that there was any wanton or grossly negligent or reckless conduct; and a simple averment of negligence does not imply any such gross misconduct. No restriction was put on the introduction of testimony applicable to any kind of neglect committed anywhere; and, while the court undertook to tell the jury, in general terms,

that gross neglect must exist, testimony was commented on which had no such bearing, and the jury were not told what the difference in duty was, or what duty devolved on defendant at one place or the other. This was one of the difficulties met with by the jury themselves, and they asked light upon it, which was not given them in any tangible form; and they were sent back with an urgent appeal to agree, and a censure of disagreement. They were told that the question of negligence was one of common sense, and that all they had to do was to exercise their own judgment on it. This practically eliminated every question of legal duty, and made the jury judges of law and fact. When negligence is charged, without any definition of duty, and proof received applicable to different theories, and the jury left to dispose of the whole without guidance, it is evident that the whole case was affected by the same radical fault.

Attention was also called to the allegation about a locomotive, which the court held unimportant. Here, as in the other matter, the true ground of the objection was overlooked. The declaration certainly conveys the idea of a train standing on the track, and proceeding, as a moving train, so as to strike the sleigh in its course. The proof shows that the cars on the side track were backing, and not moving forward, and that they were not handled by the engine as a train, but detached and shoved backward; involving, again, different duties and perils.

We have called attention to these difficulties, because they are serious and misleading. But we think there was no case for the jury. The question is not one of contributory negligence chiefly, if at all. It is impossible to say that any negligence was shown. All of the witnesses agree that the cars were moving before Schupp reached the track, and that they were in full sight all

the time. No one would have supposed that a person, having such means of knowledge as he had, would have done so crazy a thing as to run such a sleigh into a place where it would almost inevitably be hit, if the least difficulty met it. It is manifest that Schupp, in his impatience, took a plain risk, trusting to the speed of his mules to cross ahead of the cars, as he would probably have done had the way been level, instead of a deep trough. The fact that the caboose was stopped by the beer kegs is proof that it was not moving very fast. There was no evidence that the child was seen by any one on the train, and none that the trainmen had reason to suppose Schupp would attempt to head them. In making up or separating trains on their own grounds, as was recognized by the court below, nothing but direct and serious fault, indicating recklessness of consequences, can make a railroad company liable for accidents. No such fault was shown, and none was pointed out to the jury, who could not have reached the result they did if they had been charged concerning the legal duty supposed to have been violated.

Judgment must be reversed, and a new trial granted.

CHAMPLIN, J. We concur in reversing the judgment and sending the case back for a new trial, when the plaintiff can, if he chooses to do so, apply to the court for leave to amend his declaration; and we prefer to reserve our opinion upon the question of defendant's negligence until the declaration shall properly allege the defendant's duty in the premises, and its neglect to observe such duty.

LONG, J., concurred with CHAMPLIN, J. SHERWOOD, C. J., and MORSE, J., did not sit.