## Erie City Passenger Railway Co. *versus* Schuster.

1. The contributory negligence of a parent will not bar the recovery of damages by an infant for injury resulting to it from the negligence of another.

2. To a child of tender years—four years in this case—no contributory negligence can be imputed.

3. In presenting points for charge, things of which there is no evidence should not be blended with things of which there is evidence. Instruction upon things imagined should not be blended with instruction upon things of which there is evidence.

April 27th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Erie county:* Of July Term 1885, No. 116.

This was an action on the case, brought by Minnie Schuster by her next friend, Isaac Oppenheimer, against The Erie City Passenger Railway Company to recover damages sustained by her by being run over by a car of the defendant through the alleged negligence of the defendant's driver. The defendant pleaded not guilty.

On the trial, before GALBRAITH, P. J., the following facts appeared :

The Erie City Passenger Railway Company is a corporation created and existing by and under the laws of Pennsylvania,

and vested with the right to occupy with its tracks among others, State street in the city of Erie, and to run its cars thereon for the transportation of passengers. The cars are what are known as "bob-tail cars" and are run without a conductor.

On the 15th or 16th of June, 1873, one of its cars was passing north along State street with two passengers. At the south crossing on State street the car was stopped to let off a passenger for Fourth street. When the passenger got off the driver started up his horses and just as he had got started the remaining passenger spoke to him, saying she wanted to get off at Third street, the next street north or towards the lake. He turned his head for a moment to get her request, and as he again turned towards his horses he saw a child under the feet of the horses. He stopped then as soon as he possibly could, but before the car could be stopped the child passed under the car and was injured.

The plaintiff was at that time less than four years old and had been sent by its mother or father on an errand that required her to cross the street.

The driver saw children on the sidewalk as he approached the north crossing, but did not see anyone in the street, nor anyone attempting to cross the street, until after the horses struck the plaintiff.

He had been driving for about five years and was a sober, careful driver.

The child was crossing the street at a regular crossing when struck.

Fourth street is sixty feet wide from side to side, twelve feet on each side are taken for sidewalk, leaving carriage way thirty-six feet wide.

The crossings are near the outer edge of the sidewalk, leaving a space of about forty feet between them where they cross State street.

A car stopping at the south crossing to let off a passenger would put the horses' heads about half way between the crossings, so that they could get but little motion after starting until their heads would be on the crossing.

The defendants presented, *inter alia*, the following points for charge:

3. That even if the driver did see the child so close that it might reach the horses or car before they passed; it was not necessarily negligence of the driver not to stop. He was not bound to stop if it seemed improbable to him that the child would reach the horses or car, and he had a right to presume that a child of her age would not negligently run into an apparent danger. *Answer:* It is a question for the jury under

all the circumstances of the case as disclosed by the evidence, what would and what would not constitute negligence. It is for the jury to say whether under the facts shown there was or was not negligence. The point is refused as being for the jury, and not for the Court. (First assignment of error.)

7. If the jury believe from the evidence that the plaintiff was allowed to play in the street unattended, or was sent into the street by its parents on an errand that required her to cross the street, such an act was such negligence as will prevent a recovery by the plaintiff in this case. In such a case the negligence of the parents will be imputed to the plaintiff. *Ans.* Refused. (Second assignment of error.)

8. That under all the evidence in the case the plaintiff is not entitled to recover. *Ans.* This is also refused. It is for the jury to say under all the evidence whether the plaintiff is entitled to recover or not. (Third assignment of error.)

Verdict for the plaintiff in the sum of $1,483 and judgment thereon, whereupon the defendant took this writ, assigning for error the answer of the Court to the points as above indicated.

*John P. Vincent,* for plaintiff in error.—The Court should have affirmed our third point: Hestonville Passenger Railway Co. *v.* Connell, 88 Pa. St., 520; Woodbridge *v.* D. L. & W. R. R. Co., 16 W. N. C., 55; Catawissa R. R. *v.* Armstrong, 52 Pa. St., 282.

The Court should have affirmed our seventh point. In Fitzgerald *v.* The St. Paul, Minneapolis & Manitoba R. R. Co., 8 Am. and Eng. Railroad Cases, 310, the Supreme Court of Minnesota say: "The majority of the Court adopt as sounder in principle and more equitable in practice the doctrine of these cases which hold that the consequences of negligence on the part of the parents or other person having charge or control of an infant *non sui juris,* and himself incapable of negligence as imputable to the infant; that the infant being *non sui juris* and having in law a keeper to whose discretion in the care of his person he is confided, the negligence of such custodian must, as regards third persons, be held in law the negligence of the infant," and the Court cites as sustaining this, viz.: Hathfield *v.* Ruper, 21 Ind., 15; Mangain *v.* Brooklyn City R. R. Co., 38 N. Y., 455; Bright *v.* Maldur & M. R. R. Co., 4 Allen, 283; Callahan *v.* Bean, 9 Allen, 401; Holly *v.* Boston Gas Light Co., 8 Gray, 123; Brown *v.* European & N. A. R. R. Co., 58 Maine, 384; La Fayette & Quincy R. R. Co. *v.* Huffman, 28 Ind., 287; Toledo, W. & W. R. R. Co. *v.* Gratchell, 88 Ill., 441; Meeks *v.* Southern Pacific R. R. Co., 52 Cal., 602.

*Benson* (*Brainerd* and *Olds* with him), for defendant in error.—The defendant was guilty of negligence, as found by the jury, to whom the case was properly referred: Morgan *v.* Brooklyn R. R. Co., 38 N. Y., 455; North Penn. R. R. *v.* Heilman, 13 Wr., 60; Crissey *v.* Hattonville, Manitau & Fairmount R. R. Co., 25 P. F. S., 83.

The defendant's seventh point is wholly unsustainable. This Court over and over again has decided that a child of the age of five years cannot be charged with contributory negligence. This is a sound rule, founded on humanity and reason, and will stand the test of ages: Hestonville Passenger Railway Co. *v.* Connell, 7 Norris, 520; Pittsburgh, Allegheny & Manchester Railway Company *v.* Caldwell, 24 P. F. S., 421; Kay *v.* Pennsylvania Railroad Company, 15 P. F. S., 260; Rauch *v.* Lloyd & Hill, 7 Casey, 358.

Mr. Justice TRUNKEY delivered the opinion of the Court, October 4th, 1886.

At the date of the plaintiff's injury she was nearly four years of age. She was on her way to a neighboring store, having been sent alone by her parents. The injury was inflicted on the north walk of a street crossing, where people were accustomed to cross on foot: there is no evidence of special hazard at that crossing occasioned by large amount of travel, or otherwise. The driver had stopped his car at the south walk, and there was little time or distance for his team to gain much speed. He first saw the child under the tongue when the horses jumped; he had given his attention to passengers between the south and north walks. Other persons saw the child in danger and endeavored to get him to stop. "At the time of the injury to this child the driver was charged not only with driving and managing the horses, but also collecting the fare;" no change box was in the car.

Upon the driver rested the entire duty of collecting fares, caring for the convenience of passengers, and proper driving. His stop at the south walk had no tendency to warn the child, or anybody else, to keep off the north walk or be run over. Had he kept lookout between the crossings he could readily have seen the child.

In response to the defendant's request, the jury were instructed that if the horses were moving at a moderate rate of speed, and ran upon the child before she could be seen and without time for the driver to stop the car; or if the child suddenly came in the way of the horses unseen by the driver, and without giving him time to stop the horses; or if the injury did not happen from any want of ordinary care in the management of the horses at the time of the accident, the

plaintiff could not recover. And upon that instruction the questions of fact were submitted. Much more was said in the general charge, but nothing to weaken the affirmance of the defendant's first, second and sixth points.

The first alleged error is that the Court refused to charge, "That even if the driver did see the child so close that it might reach the horses or car before they passed, it was not necessarily negligence in the driver not to stop. He was not bound to stop if it seemed improbable to him that the child would reach the horses or car, and he had a right to presume that a child of her age would not heedlessly run into an apparent danger;" but instead, submitted to the jury whether under all the facts and circumstances shown, there was negligence by the defendant.

The instruction prayed in the third point was based on the assumed fact that the driver saw the child "so close that it might reach the horses or car before they passed." In the printed argument of plaintiff in error it is said, "There is not one word of evidence in the case to show that the driver saw the child before the horses struck her." That is true. The driver testifies he did not see her before; and no witness says he did. Instruction upon things imagined should not be blended with instruction upon things of which there is evidence. The testimony of the driver tended to show that he was looking ahead, just as he ought to have done, at and immediately before the moment the child was struck; other testimony tended to show that he was looking back and speaking with passengers. Here was a real question for the jury, one not to be confounded with anything outside the case. The first assignment cannot be sustained.

The second assignment of error is the refusal of the defendant's seventh point, namely, "If the jury believe from the evidence that the plaintiff was allowed to play on the street unattended, or was sent into the street by its parents on an errand that required her to cross the street, such an act was such negligence as will prevent a recovery by the plaintiff in this case. In such case the negligence of the parents will be imputed to the plaintiff."

Whether the contributory negligence of a parent will bar recovery by an infant for injury resulting from the negligence of another, is a question upon which there is a conflict of decisions in the states of this country. In Pennsylvania the cases are numerous in which infants have recovered compensation for injuries caused by the negligence of others, and no action has failed because of the negligence of the parent or guardian being imputed to the child. In Smith *v.* O'Connor, 48 Pa. St., 218, it was said, We are asked to approve and ap-

[Humphrey v. Nat. Bank of Clearfield.]

ply the doctrine that the negligence or imprudence of the parents or guardians in allowing a child of tender age to be exposed to injury in a highway, furnishes the same answer to an action by the child as the negligence or other fault of an adult plaintiff would in a similar case. The negligence of the parent or guardian is imputed to the child, and hence unless the infant plaintiff has exercised the care demanded of an adult, no action can be sustained. This is holding the child responsible for the ordinary care of adults. In our opinion the rule does not rest upon sound reason. And the judgment in favor of the infant plaintiff was affirmed.

The ruling in that case has remained unquestioned till now. But one case is cited by the plaintiff in error, Fitzgerald v. Railway Co., 8 Am. & Eng. R. C., 310, with the references therein.

In support of the ruling in Smith v. O'Connor, might be cited, Railroad Co. v. Snyder, 18 Ohio St., 399, a well considered case, and cases in several other states. For clear and forcible reasoning in support of the doctrine that where the defendant discharging his duties carefully, could have avoided injuring the child, no amount of negligence by the child's parents is a defence, reference is made to Wharton on Law of Neg., §§ 309, 310, 311, 312.

This doctrine has been repeatedly recognized. Among the cases are Glassy v. Railway Co., 57 Pa. St., 172, where it was decided the father could not recover for an injury to his son of tender years, caused in part by his own imprudence, though the infant may ; and Railroad Co. v. Mahony, Id., 187, where it was remarked if the action was by the father to recover damages for the death of the child, a very different question would be presented. To a child of plaintiff's years no contributory negligence can be imputed.

In the refusal of the seventh and eighth points there was no error.

Judgment affirmed.