ARTHUR SCHINDLER, BY ANDREW SCHINDLER, HIS NEXT FRIEND, v. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

[See 77 Mich. 136.]

*Railroad companies—Accident at crossing—Gross negligence—Infants—Imputed negligence.*

In this case the finding of the jury that the defendant was guilty of gross negligence in the management of certain detached freight-cars, to the injury of the plaintiff, who had not arrived at the age of accountability, is held to have been warranted by the evidence and circumstances surrounding the case, as set forth in the opinion.

Error to Gogebic. (Daboll, J., presiding.) Argued April 21, 1891. Decided July 28, 1891.

Negligence case., Defendant brings error. Affirmed. The facts are stated in the opinion, and in 77 Mich. 136.

*M. M. Riley* (*Bradley G. Schley*, of counsel), for appellant.

*Hayden & Young,* for plaintiff.

[The points of counsel are fully discussed in the opinion.—REPORTER.]

LONG, J. This case has been once before in this Court, and is reported in 77 Mich. 136. Only three of the Judges were sitting at the time of the argument. The judgment was reversed and the case remanded for a new trial; Mr. Justice CHAMPLIN and the writer of this opinion concurring in the reversal of the judgment, but reserving their opinion upon the question of defendant's negligence, and agreeing to the reversal upon the ground that the declaration did not properly allege the defendant's duty, and its neglect to observe such duty. The case has been retried, resulting in a verdict and judgment for the plaintiff for the sum of $8,500. Defendant brings the case to this Court by writ of error.

The opinion by Mr. Justice CAMPBELL, reported in 77 Mich. 136, sets out in great detail the most of the circumstances involved in the case, though I shall have occasion to notice at some length some of these circumstances, and others which are made to appear in the present trial. The plaintiff at the time of the injury, which occurred on the 29th day of January, 1887, was an infant aged five and a half years. The place where the injury occurred, and the location of the railroad tracks and the streets of the village, as far as the highway crossing where the injury occurred, together with the depot grounds, freight buildings, and the building where the beer was stored, are fully represented by the map on following page.

Since the former trial the declaration, by permission of the trial court, has been amended. As amended it contains two counts, but upon the trial the circuit judge

87 MICH.—26.

compelled the plaintiff to elect on which count he would proceed, and he elected to proceed on the first. This counts sets out what is claimed to be the duty of the defendant in running its trains over what is called "the track to Sunday Lake Mine," and its neglect of duty by which it is claimed the injury was occasioned, and charges that the defendant was guilty of gross negligence in the management and control of the three cars which were pushed or kicked backward along this Sunday Lake branch track over and across this highway leading from the corner of Nunnemacher street and Sunday Lake street towards the beer-house, situate near the main line of the defendant's railroad; said cars being kicked across said road with great speed, unaccompanied by a locomotive, unattended by a brakeman or the conductor of the train, or by any person to set brakes or give signal or warning, and with no one at the rear or advancing end thereof to observe the crossing, or signal or warn approaching travelers in case of need, and with no one on or about said detached and moving cars acting as a lookout, watchman, or brakeman, with no flagman or switchman at the crossing to warn persons approaching, and without the knowledge of plaintiff or Schupp (in the rear end of whose sleigh plaintiff was riding). The declaration alleges that this was gross negligence on the part of the defendant towards the plaintiff.

The declaration further alleges, as to the place where the injury occurred, that at the time of the injury there was, from a point at or near the junction of said Nunnemacher and Sunday Lake streets, a private road which led across said Sunday Lake branch track in a southeasterly direction, to the warehouse grounds situate along defendant's main line and side tracks, which road had been for a long time prior thereto used by the public of Wakefield village, and others who chose to use it, for

travel between the village on the Nunnemacher side of said tracks and the warehouse grounds, and that such use was permitted and encouraged by defendant at the time of the injury; that children, at and before that time, had been accustomed to pass and repass along said private road, and over said crossing, which was well known to defendant; and that defendant then and there owed a duty to all persons traveling over said road, and about to cross said branch track thereon, to take precautions in running cars over said crossing to prevent injury to persons thereon.

Some additional evidence appears in this record to that which appeared upon the former trial. The defendant's counsel present a brief containing 50 pages of printed matter. The brief argues many questions which have been settled by the jury.

At the close of the testimony counsel for defendant submitted the following questions to be specifically answered by the jury, which were answered as hereinafter stated:

"1. Did the employés of the defendant, in charge of its train at Wakefield at the time of the accident, know that the child Arthur Schindler was in the sleigh of John Schupp?

"*A.* No.

"2. During the time Schupp was moving from the beer-house towards the crossing C were the cars of defendant being backed upon Sunday Lake spur track?

"*A.* Yes.

"3. Was there anything to obstruct the view of Schupp of the cars that were backed from the time he left the beer-house until he reached the crossing C?

"*A.* Yes.

"4. Was the action of the trainmen in charge of defendant's train at the time of plaintiff's injury, in pushing or shunting the cars on Sunday Lake spur track in the manner which they did, such as would indicate they were regardless of the consequences, and did not care whether they ran the plaintiff down or not?

"*A.* Yes.

"5. Could John Schupp, by the exercise of such care and prudence as an ordinarily careful and prudent man should have exercised under the circumstances, have discovered that the cars of defendant were being backed upon Sunday Lake spur track in time to avoid the accident?

"*A.* Yes."

One of the main questions involved in the controversy here is that, under the findings of the jury, their general verdict should have been in favor of the defendant. Counsel for defendant say in their brief that any claim plaintiff has for recovery must be based upon the fourth question and answer; that of the five questions the second and third are unimportant, as they bear only upon Schupp's negligence, and by their answer to the fifth question the jury have distinctly found Schupp guilty of negligence. It is contended that the answer of the jury to the first question shows that the defendant was in utter ignorance of the presence of any one there to whom it owed a special duty; that the answer to the fourth question, in the light of the answer to the first question, is a plain contradiction and absurd; and that, irrespective of the first question and answer, this fourth answer is utterly unsupported by the evidence. Thus it is that the learned counsel for defendant attempt to sweep away the special findings of the jury, except their finding that Mr. Schupp, the driver of the sleigh in which plaintiff was riding, was guilty of contributory negligence.

As we have said, the declaration charges the defendant with gross negligence. The jury have found the defendant guilty of gross negligence by the finding that its servants were regardless of consequences in shunting the cars upon the Sunday Lake spur track in the manner they did, and that these servants and employés of the

defendant did not care whether they ran the plaintiff down or not.

The answer of the jury to the first question does not bear the interpretation for which counsel contend. The finding that the employés of the defendant did not know that the child was in the sleigh of John Schupp is not a finding that the employés did not know that people were frequently in the habit of crossing and recrossing this spur track with the knowledge and consent of defendant company. It is not a finding that these employés did not know that John Schupp was at the beer-house at the time their train came down the main track, and at the time they shunted or kicked these three cars loose from their train across this private way, over which people were accustomed to pass and repass. The testimony shows conclusively that these employés saw Schupp at the beer-house when their train came in, and knew he was on his way to that crossing at the very time when they kicked these cars across this highway. The fact, therefore, that these employés did not know that the plaintiff was in John Schupp's sleigh would have no bearing upon the question of the gross recklessness of these employés in kicking these cars across this way in the manner they did. The defendant and its employés owed a duty to all persons crossing and recrossing at that point; for it appears by the testimony in this record, which was fairly submitted to the jury, that the railroad company not only permitted its use to all persons crossing over to this warehouse, but had opened that very way by shoveling out the snow for people to pass and repass across this spur track at that point.

It is asserted by counsel for defendant that the answer to the fourth question is utterly unsupported by the evidence. It must be remembered that this question was propounded by counsel for defendant, and, now that the

jury have found the fact against him, he complains that there was no testimony in the case tending in the slightest degree to support this finding. The testimony introduced on the part of the plaintiff tends to show that the children in the village of Wakefield often used this crossing, played upon and about it, and walked and rode back and forth upon it, to the knowledge of, and without objection from, the servants and employés of the railroad company stationed there; that from five to seven small children went with Schupp, hanging upon his sleigh, across this track to the beer-house on that day, and were with him there at the time of the coming in of the train to which these cars were attached, and were upon that side of the railroad crossing at the time these cars were shunted across this highway; and, if the trainmen had been in their proper places, and had looked, undoubtedly, from the testimony given, they could have seen these children in and around Schupp's sleigh at the time they shunted the cars across. There was no other way by which Schupp and these children could get back to the village.

The crew of the freight train consisted of Cole, the conductor; Glavin, engineer; Falvey, fireman; Durkie and Sutton, brakemen. When the train came in it ran its entire length beyond the switch marked "W" on the plat, and remained there only a few minutes, when it was moved backward along the spur track, eastward, towards the crossing C. The brakeman Durkie turned this switch, and when the train had acquired considerable momentum uncoupled the three rear cars, composed of the caboose and two freight-cars loaded with square timber, and these three cars, thus separated and kicked along the spur track, ran with considerable speed towards the crossing. The plaintiff's testimony tends to show

that the engineer and fireman sat in the cab of the engine, and, with the cars between them and the road crossing C, their sight of this crossing was obstructed. No bell or whistle was sounded, but this may be unimportant, and probably would not be evidence of want of care at this particular crossing, being a private way across defendant's grounds, had other necessary precautions been taken to prevent persons being injured in attempting to cross there. The plaintiff's evidence tends further to show that not one of these trainmen got upon these cars, or pretended to exercise any control over them; that no one of them was at the brakes; that Durkie, who opened the switch, stood upon the ground where he uncoupled, and remained with that part of the train attached to the engine; that Cole, the conductor, was across Nunnemacher street, in O'Brien's saloon, drinking. Sutton, the other brakeman, is not produced as a witness, and his whereabouts at the time of the accident are not accounted for. It is true that Durkie says that he got upon the top of these cars on one side of the boxcar next the cut-off train, and Conductor Cole claims that he was upon the forward end of the caboose, between it and the car ahead; but we are considering the question whether there was any testimony upon which the jury were warranted in finding the defendant guilty of gross negligence, and will confine the discussion to the evidence tending to show this fact, without reference to the question whether it was in dispute. We think the evidence and circumstances surrounding the case sufficient to warrant the finding.

It is said that, under the circumstances of this case, knowledge by the defendant's employés of the presence of the plaintiff there was essential to indicate that these employés were guilty of wanton and reckless conduct in

shunting these cars over. Counsel, in support of this proposition, cited *Chicago & N. W. Ry. Co. v. Smith,* 46 Mich. 504. In that case it appears that—

"An 8-year old boy, trespassing upon the premises of the railway company, got on the top of the engine, and was ordered off by the fireman, and, as he jumped off, he fell. The locomotive was started at that moment, and the tender passed over his leg. He was a boy of more than average intelligence, and had been warned against going on the premises or riding on the engine. It was held that the railway company could not be held liable for the injury without showing that the engineer or other servants of the company in charge of the locomotive knew that the child was in the way, or that they had been reckless or negligent in the management of the engine, or could have anticipated the injury."

The circumstances in the present case do not indicate that Schupp or the plaintiff were trespassers upon the defendant's premises. Though not a legally laid-out highway, yet it was a way kept open by defendant's employés, and the public were permitted, by consent of the company, to use it as a highway. It was the only way in use to this beer-house, situate along said company's main track, and upon the company's premises; and defendant owed to the public that same degree of care in handling its trains over and across this way as though it had been a public way, except, perhaps, a statutory duty of ringing its bell or blowing its whistle on approaching the way. *Hanks v. Railroad Co.,* 147 Mass. 495 (18 N. E. Rep. 218); *Duame v. Railway Co.,* 72 Wis. 523 (40 N. W. Rep. 394). In fact, it appears by this record that the company's employés, in making up trains standing across this way, had been accustomed to open the train at this crossing for the purpose of public travel over it, and that in shunting its cars theretofore its brakemen had been accustomed to climb upon the top of the cars, with their hands upon the brake, thus keeping

control of the cars shunted or kicked backward towards this way. The circumstances of this case, and the manner in which these cars were permitted to make this crossing, and the rights of the plaintiff over this way, certainly do not bring this case within the ruling of this Court in *Chicago & N. W. Ry. Co. v. Smith*, 46 Mich. 504. It is said by defendant's counsel that the testimony tended to show that the conduct and management of these cars upon that occasion was not reckless and wanton, but was the usual and customary conduct of trains in similar circumstances and in similar places; but, as we have said, the jury found this fact against the defendant, and we now know of no rule or decision of any court which holds the defendant not guilty of gross and wanton negligence in kicking or shunting cars across a highway without guard or brakeman upon such cars to control them, in the face of the fact that people are constantly passing and repassing over the way; and, if this is the customary and ordinary way of shunting out cars over traveled ways, it is time that railway companies took some precaution to prevent accidents, which are very likely to occur by this method of business.

It is claimed that the negligence of Schupp is to be imputed to the child, and counsel cite in support of this proposition *Lake Shore & Mich. Sou. R. R. Co. v. Miller*, 25 Mich. 277, as settling the rule in this State. In that case, Mrs. Miller, the plaintiff, was a woman of full age and discretion, and was riding with Mr. Eldridge, who was driving the team. It was said by the Court in that case that the evidence tended affirmatively to prove actual and gross negligence on their part which contributed directly to produce the injury complained of, and that they were both aware in fact that danger was to be apprehended there; and the rule was settled in the case that the negligence of Eldridge, the driver of the

team, was the negligence in fact of the plaintiff; that this was a private conveyance, and the plaintiff identified herself with the driver, and, unless the driver was free from negligence, she could not recover. This is the general rule, and has been since followed in this State. But the facts in the present case plainly distinguish it from that. The charge in the declaration is for gross negligence. The jury have found the defendant guilty of gross negligence. There is no room, therefore, for the claim that the defendant company should be excused for its negligence, though Schupp may have been negligent, and his negligence might have been imputed to the child. Whether, under the circumstances stated here, Schupp's negligence could be imputed to the child, we do not determine, as under the finding of the jury there is no room for contending that Schupp's or the plaintiff's contributory negligence could be made applicable in determining the rights of the parties in this case. The term "gross negligence" has been used in cases decided by this Court, and has a definite meaning, when referred to as authorizing a recovery for a negligent injury, notwithstanding the contributory negligence of the plaintiff. It means the intentional failure to perform a manifest duty, in reckless disregard of the consequences, as affecting the life or property of another. It also implies a thoughtless disregard of consequences, without the exertion of any effort to avoid them.

Counsel for defendant say in their brief, in referring to *Lake Shore & Mich. Sou. R. R. Co. v. Miller*, 25 Mich. 277, and other cases cited sustaining the doctrine there laid down:

"But, again, all the above cases were cases of adults, and in that respect differed from the case at bar, of an infant 5 years old, and incapable of taking care of itself."

Counsel, in support of their first proposition that Schupp's negligence was the negligence of the child, cite *Waite v. Railway Co.*, El. B. & E. 719. In that case it appears that the plaintiff was an infant aged five years, and accompanied Mrs. Park, his grandmother, to the railway, and by her negligence, combined with the negligence of the servants of the railway company, the plaintiff was severely injured, and brought an action by his next friend against the company. It was held by the court of exchequer chamber, affirming the court of queen's bench, that the child was so identified with Mrs. Park, in whose care he was when the accident happened, that her contributory negligence would prevent recovery. In that case the question of the gross negligence of defendant was not presented, and therefore the case has no weight in the consideration of the present one, under the claim made.

Some other questions are raised by counsel in their brief. It is claimed that there was variance between the proofs and the allegations of the declaration in reference to Sunday Lake street. The declaration alleges—

"That at the time aforesaid, leading from a point at or near the junction of said Nunnemacher and Sunday Lake streets, on the north side of said Sunday Lake branch track, a private road existed and led across said Sunday Lake branch track, in a south-easterly direction, to the warehouse grounds situated along said defendant's main line and side tracks, and thence beyond, which private road, and the crossing thereof over said Sunday Lake branch, was, at the time aforesaid, and had been for a long time prior thereto, used by the public of Wakefield, and others who chose to use it, for travel between the village on the north side of said tracks, and the warehouse grounds, and beyond, in crossing said Sunday Lake branch track; and the use thereof, as aforesaid, was permitted and encouraged by the defendant at the time aforesaid."

There was no such variance as claimed by defendant's counsel.

It is also claimed that the court was in error in not permitting the counsel for defendant to read in evidence on the trial the testimony of one Luke Sweet, which was taken upon the first trial of the cause. In support of this claim counsel cite *Labar v. Crane*, 56 Mich. 585. That was an action for malicious prosecution. The case had once been tried. At the time of the second trial it appeared that one Allen, who was the justice who issued the warrant, was beyond the jurisdiction of the court, and the plaintiff offered to put in evidence the testimony given by him upon the first trial in the circuit court. For this purpose he called the stenographer who took the testimony, and he testified that he had it present, and that it was taken correctly. The plaintiff then offered to read it, but the defendant objected, on the ground that he had since the trial taken the deposition of Allen in the case, by the consent of the plaintiff, and that he had it present then in court. This was conceded, but the plaintiff insisted that, notwithstanding this, he was entitled to read the testimony of Allen given upon the first trial, and the court received it. It was held by this Court that the trial court was not in error in receiving this testimony. It was said by this Court in that case:

"It may be that the deposition was only supplementary and complemental to the former testimony, or was taken to bring out on the part of the defense some one point not sufficiently presented or explained before. In such a case it would be clear that the deposition would not exclude the reading of the former testimony. But we are not satisfied that it should be excluded if the deposition had been shown to cover the whole case. The plaintiff had examined the witness in open court, with full liberty of cross-examination, and, if the defendant on his own part had examined him with equal fullness afterwards,

there would seem to be no good reason why each party should not be at liberty to put in evidence the testimony he had taken. It may be said that the deposition would be most likely to be taken down with accuracy, and this would be fair matter of argument if the two were found to differ; but we do not think the defendant could exclude the plaintiff's right to put the evidence he had taken before the jury by subsequently retaking it on his own behalf."

The present case does not fall within that ruling, and the reasons given are not applicable to the present case. In the present case it appears that there had been two trials in the circuit court before the present trial. On the first trial the plaintiff had verdict and judgment, which was reversed in this Court, and a new trial ordered. At that time the declaration did not allege gross negligence, and, under the intimation of this Court, plaintiff in the court below, after the case was remanded, amended his declaration by alleging the gross and wanton and reckless conduct of the defendant's servants and agents in the manner in which they kicked those cars backward across this highway. The cause was tried upon that issue, and Sweet, who had been examined as a witness upon the first trial, was again examined by the defendant. This trial resulted in a verdict for the plaintiff, and this verdict was subsequently set aside by the trial court. The present trial is the third one, and, Sweet not being present, the counsel for defendant proposed to read his testimony taken upon the first trial, and not upon the second. This was objected to by plaintiff's counsel, who claimed that the defendant was entitled to read the testimony taken upon the second trial, but not upon the first. This was so ruled by the court, and defendant's counsel read to the jury the testimony of Sweet taken upon the second trial. We find no error in this. The issue made by the amended declaration was quite different from that

upon the first trial, and it appears that upon the second trial the witness was fully examined and cross-examined by counsel.

But we need not rest the question upon this reason alone. Mr. Sweet was one of the sectionmen of the defendant company. He lived a mile and a half from this crossing, and testified that it might have been two weeks before the accident since he had seen the crossing, and that it might have been used as a crossing, and that it probably was so used. He was called by the defendant for the purpose of showing that he was directed by the roadmaster to take up the crossing at the crossing C, and that he did so in the fall before, and notified Schupp and other teamsters not to cross there, and he so testified. The witness was fully examined and cross-examined on the second trial, under the issues then made, and the court was not in error in holding that the testimony given by him on the first trial, under the issues then made by the pleadings, could not be read in evidence by the defendant. We have looked into the record here containing the testimony of Luke Sweet on the first trial, and are satisfied that the defendant was not prejudiced by the court ruling it out. The testimony given by him on the second trial was as favorable to the defendant as that given by him on the first trial. In fact, it is substantially the same.

Some other errors are alleged, but we do not deem it important to notice them, and such as are not noticed herein are overruled. The oral arguments, in the main, were directed to the points which are here discussed.

We find no error in the record, and the judgment must be affirmed, with costs.

CHAMPLIN, C. J., and MCGRATH, J., concurred with LONG, J. MORSE, J., did not sit.

CHAMPLIN, C. J. (*concurring*). In this case the plaintiff at the time of the injury was too young to be held accountable for the neglect to exercise due care and caution, but it is claimed that the negligence of the driver is imputable to the child. The leading case favoring the doctrine of imputed negligence is *Hartfield v. Roper*, 21 Wend. 615, and the leading case denying the doctrine is *Robinson v. Cone*, 22 Vt. 213. In the Hartfield case, Judge Cowen held that there was no evidence of any negligence on the part of the defendants, and this, of course, disposed of the plaintiff's right to recover. But he discussed the negligence of the child, who was about two years old, and of the parents in permitting it to stray into the public highway, where it was injured, and he laid down the doctrine that the negligence of the parents should be imputed to the child, and for that reason the child ought not to recover.

To my mind, the reasoning of the learned judge is not satisfactory. There is no principle of justice which demands that the fault or want of care of one person shall be imputed to another, who is without fault, or incapable of caring for himself, and thus excuse the fault or negligence of a person causing injury to an innocent party. The doctrine of imputed negligence punishes the innocent and permits the guilty to escape. It denies a remedy for a civil wrong done to an individual through the negligence of another, when the party injured was not in fault. There is no principle of public policy that requires that this should be done. Parents or guardians may be negligent of their duty towards their offspring or wards, but this should not be a reason for excusing the negligence of others towards innocent and unprotected children, or persons incapable of taking care of themselves.[1] It may be, and doubtless is, a sufficient

---

[1] See *Shippy v. Au Sable*, 85 Mich. 280.

reason for not permitting the parent or guardian to recover damages to themselves for injuries caused by negligence, to which injuries they have contributed by their own negligence. I think the weight of modern authority is opposed to the doctrine of imputed negligence, some of which are the following: *Railroad Co. v. Hanlon,* 53 Ala. 70; *Railroad Co. v. Harris,* 67 Id. 6; *Cumming v. Railroad Co.,* 104 N. Y. 669 (10 N. E. Rep. 855); *Whirley v. Whiteman,* 1 Head, 610; *Railroad Co. v. Mahoney,* 57 Penn. St. 187; *Railway Co. v. Schuster,* 113 Id. 412 (6 Atl. Rep. 269); *Railway Co. v. McDonnell,* 43 Md. 534; *Railroad Co. v. Ormsby,* 27 Grat. 455; *Robinson v. Cone,* 22 Vt. 213; *Railway Co. v. Moore,* 59 Tex. 64. See, also, Whart. Neg. §§ 309–312; Whit. Smith, Neg. note to page 412 *et seq.*

Another branch of the same doctrine was that which imputed to the passenger the negligence of the driver of the vehicle, and it is sought to be applied in this case. This principle was laid down in *Thorogood v. Bryan,* 8 C. B. 115, which for a time was followed in the courts of England, and by some courts in this country. But the principle asserted was so at war with reason that it was followed under protest, and its correctness criticised, until recently it has been overthrown and discarded in England in the case of *The Bernina,* 12 Prob. Div. 58, after a full examination and careful consideration of all the authorities. And likewise the Supreme Court of the United States, after a thorough review of the American authorities in *Little v. Hackett,* 116 U. S. 366 (6 Sup. Ct. Rep. 391), held against the doctrine. This Court, in *Cuddy v. Horn,* 46 Mich. 596, refused to follow the doctrine of *Thorogood v. Bryan.* See, also, *Becke v. Railway Co.,* 102 Mo. 544, 9 Lawy. Rep. Ann. 157, and notes, for a collection of the authorities; *Railway Co. v. Eadie,*

43 Ohio St. 91 (1 N. E. Rep. 519); *Transfer Co. v. Kelly* 36 Id. 86.

The jury having found that the defendant was guilty of reckless negligence, and the plaintiff not being of an age of accountability, I concur in the opinion of Mr. Justice LONG.

GRANT, J. *(dissenting)*. I cannot concur with my brethren in the conclusion reached by them in this case. Even if, under the declaration and competent proofs, a case were made for the jury, still several grave errors were committed upon the trial, for which the judgment should be reversed.

1. One Sweet, a section foreman of the defendant, testified that, early in the fall of 1886, he notified all teamsters not to use the road on which the accident happened, and that afterwards he had notified no one except Mr. Schupp. A witness was recalled by plaintiff in rebuttal, and the following question was asked and answered under objection:

"*Q.* A man named Sweet has testified here that in December or January before this accident he notified several people who used that road crossing C not to use it any more. Did he ever notify you?

"*A.* No, sir."

This was error. It permitted the jury to draw the inference that the witness Sweet was impeached. Sweet had testified to no person or time covered by the question.

2. The witness Sweet had testified on the two preceding trials. The defendant offered his testimony taken upon the first trial, which was rejected by the court on the ground that defendant was entitled to read only the evidence taken upon the second trial. This testimony should have been admitted under the former ruling of

this Court. *Labar v. Crane,* 56 Mich. 585. The facts in that case were the exact parallel of this.

3. Evidence of the failure to blow the whistle or to ring the bell, or the absence of a flagman at crossing C, was incompetent, because:

1. The absence of either had nothing to do with causing the accident. Schupp saw the cars approaching, stopped, and then, standing up, applied the whip to his team, and deliberately drove across in the mad attempt to beat the cars. Several persons standing in the vicinity witnessed the transaction, and all agree in this. The children who were behind Schupp's sleigh, some riding upon their sleds, and others hanging onto the rear of the sleigh, heard the noise of the cars, saw the danger, and readily avoided it. When one sees and knows the danger, signals become immaterial. They would have been of no benefit to Schupp, and manifestly would have given no warning to plaintiff.

2. The only ground of negligence upon which the plaintiff could, in any event, recover was in shunting these cars without any person upon them to control them.

3. There was no duty imposed upon the defendant to keep a flagman at this crossing. Only those who received freight at the warehouse had the right to use it.

But in the taking of testimony, in the plaintiff's requests to charge, and in the charge of the court, great prominence was given to the failure on the part of the defendant to blow a whistle, ring the bell, or station a flagman. This testimony was incompetent. It is too plain for argument that it would influence the jury. If the defendant had men upon these cars as they were shunted back, then the verdict should clearly have been for the defendant.

4. The court left it to the jury to determine whether Schupp was guilty of negligence. It should have instructed them that he was guilty not only of negligence, but of gross negligence. He was plaintiff's witness, and testified that he saw the cars, and tried to drive across

ahead of them. This error was not cured by the finding of the jury that Schupp, by reasonable care, could have avoided the accident.

5. The court instructed the jury that he—

"Should not lay down to them any particular rule as to what duty the railroad owed the plaintiff, as to whether they ought to have provided a watchman or brakeman or lookout in the rear of the caboose, or whether they should have had more or less hands upon the train, or whether they should have sounded the whistle or rang the bell.   *   *   *   I have been requested to charge you as to the particular negligence that this company would have to be guilty of in order to be liable, but upon that branch of the case, as I stated to you earlier in the charge, I cannot and shall not pass, but leave to you. It is not for me to say that any accident happened because a bell was not rung, because a warning was not given, because a man was not stationed upon the rear of the caboose, nor any of those matters. It is for you to say whether any of those, or all of them, —it may be any or all or any part of them,—contributed to the injury. Then, if you think they did, if the bell was not rung (and that is for you to say), and that it contributed to the injury, if no lookout was placed on the cars where he ought to have been, if you find there was not, and that contributed to the injury, if nobody was upon the rear of the caboose, and that contributed to the injury, any or all of them,—whether these things happened,—you are to say, and not me."

The charge contains other language of like import. It was the clear duty of the court to instruct the jury as to what duty the defendant owed the plaintiff, and it should have instructed them that the failure to sound the whistle or ring the bell or post a flagman was of no consequence. Furthermore, this charge was erroneous, in that there was no evidence that the train was not properly manned with competent employés, nor was there any evidence that it was necessary to station a watchman on the rear of the caboose. The court should also have instructed the jury as to the sole act of negligence upon

which the right of recovery rested. As was said by Mr. Justice CAMPBELL in this case (77 Mich. 155),—

"It is not competent for a court to allow a mass of testimony to go before a jury, and leave them to decide, each for himself, what is legal negligence and what is not."

It is impossible to tell from the record in this case whether the jury found the defendant guilty for failure to blow the whistle, or to ring the bell, or station a flagman or a watchman upon the rear of the caboose, or the failure to have men upon the cars, or the failure to give warning.

6. The charge of the court was very voluminous, covering 27 pages. In the first 11 pages not a word is said to the jury about gross negligence, but it discusses the question of ordinary negligence. He closed this part of his charge by saying,—

"The first question for you to pass upon is, was this defendant guilty of negligence, under the rules I have laid down?" and then continued: "If you find from the evidence that the plaintiff was not in sight either in the sleigh of Schupp, or was not seen by the servants of the defendant in the sleigh of Schupp, or in such proximity to the track as would give them reasonable apprehension that he would be crossing it, then, Schupp knowing the circumstances there, and that these cars were liable to be kicked back onto Sunday Lake spur, he would be charged with knowledge of that fact, and would be guilty of negligence under those circumstances, and the company would not be liable unless they were guilty of gross and wanton negligence. I don't mean by that that they would have to be guilty of an intention to injure any one, but they would have to be guilty of that degree of negligence that would show an utter recklessness or disregard to the safety of the people upon the track."

This is all the language in the charge referring to gross and wanton negligence. I am unable to hold that in law the defendant has had a fair and impartial trial

where the court has given no other instruction than this upon gross and wanton negligence, without finding which the jury must have rendered a verdict for the defendant, and where the court directed so much attention to other acts of the defendant, which had no bearing whatever upon its liability. The jury found that the defendant had no knowledge that plaintiff was in the sleigh of Schupp. The jury could not well have found otherwise, for there was no evidence tending to show that the defendant did know it. Which one of these alleged acts, therefore, was it upon which the jury based the verdict of gross and reckless conduct? They were left to roam at will in search of some fact upon which to base some degree of negligence.

7. The court, in closing its charge, used this language:

"I think I have stated to the jury—if I have not, I do now state to them—that, in case the railroad compeny's servants in charge of that train saw these children and the plaintiff, Arthur Schindler, in the sleigh of Schupp, under such circumstances as they might reasonably expect them to cross that track, then they owed a duty to the child such as would be reasonable and prudent under these circumstances, he being a child; and the negligence of Schupp, under those circumstances, would not necessarily defeat a recovery by the child. I understand that I have charged that, and I think you will find it almost in that language."

No circumstances were shown by which defendant's employés could reasonably have expected plaintiff upon the crossing.

8. But, under the facts in this case, I do not think the plaintiff has made out a case for recovery. The present record differs in no essential particulars from that in 77 Mich. 136, and I entirely concur with the conclusion then reached by Mr. Justice CAMPBELL. As already stated, recovery can only be based upon proof of gross

negligence and reckless conduct on the part of the defendant. To maintain this, it was necessary for plaintiff to prove that defendant's employés knew, or should have known, that plaintiff was liable to be at that time riding upon Schupp's sleigh, and that Schupp would commit the crazy act of attempting to beat the cars when he saw them coming. It was not grossly negligent in the defendant to shunt the three cars back upon its spur track without any of its employés upon them, unless there was a probability that some person of age and discretion might, in the exercise of ordinary care, be upon the crossing when the cars reached it, or that an infant not chargeable with negligence was liable to be there. Now, assuming, under plaintiff's theory, that the brakeman separated the cars at some point west of the crossing, and that neither he nor Conductor Cole was upon the cars as they went back, in what does this act of gross negligence consist? Schupp had a clear view of the situation; so, also, did the brakeman. No children were near the track. As the situation then was, no one had time or opportunity to be upon the crossing C when the cars reached there, except by his own gross negligence, or by the gross negligence of Schupp. Clearly, this defendant cannot be held liable under these circumstances, unless its employés were chargeable with the knowledge that Schupp was liable to commit so crazy and reckless an act, and also that plaintiff was liable to be in his sleigh. It owed no duty to Schupp. How can it owe a duty to one of whose existence it was not aware?

It is significant that all the witnesses who stood in the vicinity, and saw the whole transaction, some of them from the time Schupp left the warehouse, aside from the children who were behind the sleigh, did not see the plaintiff upon the sleigh, and had no intimation he was there until the accident happened. Schupp himself did

not know he was there, for, as he started from the warehouse, he drove the children away with his whip, and took the plaintiff out, and set him down upon the snow. One of the larger children picked him up, and sat him down in a vacant place behind the beer kegs in the hind part of the sleigh. I find no principle of law or justice upon which defendant, through its employés, can be held liable for the knowledge of facts which others, having equal facilities, did not see. Furthermore, there is no pretense that the trainmen had ever seen the children of the village riding upon these sleighs. There was no direct evidence that even the station agent had seen it; but, if he had, the legal inference would be that they were riding by permission of the driver, under whose care and control they would then be. Upon this branch of the case, the court instructed the jury as follows:

"And in this case I submit this question of negligence and contributory negligence to you upon two propositions. If you find in this case that the agents or servants of this defendant in charge of that train on that day did not see the child either in the sleigh of Schupp, as he was moving to cross the track, or so near the track as to give them reasonable apprehension that he was crossing it or in danger of crossing the track, then this case is governed by the question of the negligence of Schupp. That is, if they did not see the child either in his sleigh, or see him anywhere about the grounds, under circumstances that would lead them to infer they might be crossing the track, had no knowledge that the child was there at all, nor reason to expect him there, in that case then the question would be governed by the negligence of Schupp, and, if he was negligent under the rules I have laid down to you, the plaintiff cannot recover; for, if they had no knowledge of the boy's presence in close proximity to the track, if they had a man stationed at the train where he could have seen, and the boy was in such situation he could not be seen, then, if there is negligence on the part of Schupp, the boy being in that sleigh, riding with him, the defendant having no knowledge that he was there, Schupp's negligence would be

such as would control this case, if Schupp was negligent, because Schupp and every man in his senses, and a man who was, as Schupp is proven to have been, familiar with the running of trains there, with that ground, and the liability of cars being kicked onto Sunday Lake spur, is presumed to use his reasonable senses; and under the rules that I have given you, and shall give you further on, if he was negligent, then the boy would have to suffer for it, because the company would not be obliged to look out for something that they could not see or anticipate."

Again, there is no evidence that the accident could have been avoided, even if the conductor and brakeman had been upon the cars. They would have been under no obligation to attempt to stop the cars until they had seen the determination on the part of Schupp to attempt to cross first.

9. In view of the special findings of the jury, it is proper to note the evidence *on the one* act of negligence necessary to be proven, namely, were there persons upon the cars sufficient to control them? If they were there, then no question is raised but that they used the necessary precaution; nor is it claimed that two were not sufficient. The testimony on the part of the plaintiff was of a negative character, namely, that witnesses did not see any one upon the cars. One Bedell testified that there was no one upon the top of the rear cars as they went backwards; that he saw the brakeman, Durkie, uncouple them standing upon the ground; that as soon as they were uncoupled the rest of the train hid Durkie from his sight. On cross-examination, he said he would not swear that there was no one on the cars, and both upon a former trial, as well as upon this, he said he paid no particular attention to see whether anybody was on the cars or not. One Murphy testified that he came out of his saloon, and saw the cars moving back; that he

could not see anybody on the cars, but would not swear there was no one. Schupp testified that there was nobody on the cars. This comprises all the evidence tending to show that there was no one upon the cars.

For the defendant, Conductor Cole testified that he was on the front end of the caboose, and went there for the purpose of handling the brakes; that, hearing some one halloo, he applied the brakes, and, looking out, saw Schupp's mules just pass the cars in the road, standing up. Brakeman Durkie testified that he uncoupled the cars, and immediately climbed upon them, and saw Schupp coming, and hallooed to him to stop, and immediately applied the brakes. Walter Lobb, a disinterested witness, testified that he saw Durkie cut the cars off, go up on them, and ride them down the track; that he saw Schupp, and hallooed to him; and also testified that he saw Mr. Cole on the front of the caboose. Thomas Gallagher, a disinterested witness, also testified that he heard the brakeman halloo to Schupp not to cross the track, and that the brakeman was on top of the car.

In view of this testimony, does it not seem quite probable that the jury found the gross negligence to consist of some other act than the failure to have men upon these cars?

It is claimed that there was evidence on the part of one Orr, a witness for the plaintiff, tending to show that Conductor Cole was in a saloon drinking with him at the time the cars were shunted back. The testimony of Mr. Orr does not sustain the claim. This saloon belonged to one O'Brien, and is marked upon the plat. Orr says that Cole drank with him in the saloon shortly after the train came in; that after they came out the train started back, and he did not see Cole again until after the

accident. He went to another saloon, and when he came out the accident had occurred. There is no testimony that Cole did not have ample time to reach the train as it was coming back.

10. The judgment should not stand, for another reason. The jury found, in reply to a special question, that the view of the cars as they were backed down was obstructed from the time Schupp left the beer-house until he reached the crossing C. Not only was there no testimony upon which to base such a finding, but it was directly contrary to the fact. The testimony of all the witnesses, both on the part of plaintiff and of defendant, was that the view was unobstructed. Schupp testified: "When I was on the sleigh I could see all over there; there was nothing to hide my view." As already stated, the children saw the danger, and avoided it. No verdict ought in justice to stand in the face of such finding.

11. The answer to the fourth question is not conclusive upon the defendant. The question was undoubtedly drawn, and very properly, for the purpose of calling the attention of the jury to the one fact, without finding which there could be no recovery. They readily found that defendant's trainmen "did not care whether they ran the plaintiff down or not." There is nothing in this case, in my judgment, on which such a finding can be based. It virtually finds those trainmen, whose alleged duty it was to be upon the cars, guilty of manslaughter, and that in the face of the fact that no person could have been upon that crossing at the time the cars reached there, except by his own gross negligence, or the equally gross negligence of Schupp. Does the law hold a man guilty of not caring whether he runs down and kills another, when there is nothing in the circumstances or

surroundings to inform him that his act may result in the death of one of his fellowmen?

There were other important questions involved in the case which it is unimportant to discuss.

Judgment should be reversed, with costs, and a new trial ordered.